## KELLEY v COLUMBUS RAILWAY, POWER & LIGHT CO

Ohio Appeals, 2nd Dist, Franklin Co

No 2881. Decided March 13, 1939

Henderson, Burr, Randall & Porter, Columbus, and Lawrence Stanley, Columbus, for defendant-appellant.

## OPINION

By HORNBECK, PJ.

This is an appeal on questions of law.

The action was for personal injuries claimed to have been suffered by plaintiff as a passenger, by the sudden and unexpected movement of a street car which he was boarding. The answer of the defendant was a general denial with an affirmative defense of contributory negligence in that the plaintiff boarded the car after it was in motion. This affirmative defense was denied in the reply.

The cause was submitted to a jury resulting in a verdict for the plaintiff. Defendant moved for a directed verdict at the conclusion of the case, for a judgment **veredicto non obstante** and for a new trial. The trial judge sustained the motion for a new trial, but overruled the other motions. The appeal is from the order overruling the motions of defendant for directed verdict and for judgment notwithstanding the verdict.

The appellant's contentions that the court should have sustained its motions are well summarized in its brief:

"The plaintiff's evidence is not credible—is not worthy of belief—because: (1) His testimony as to how the accident happened is physically impossible. (2) His uncorroborated testimony that he attempted to board the street car when stopped, is directly contrary to the statement that he gave in the pres-

Schwartz & Gurevitz, Columbus, for plaintiff-appellee.

ence of a court stenographer two days after his accident, at which time he said repeatedly that the street car was moving when he tried to board; these admissions are not and can not be denied. (3) His testimony is flatly contradicted by the testimony of eight eye witnesses, three of whom saw him running after the street car—the other five said plaintiff was not in that vicinity when the street car started, including two ladies who boarded at that stop."

There is a cross-appeal by the plaintiff predicated upon the claim that the trial judge abused his discretion in sustaining the motion for a new trial.

This case was well tried and we have been favored with the opinion of Judge Leach, passing on the motions for new trial and for judgment non obstante, with which we are in accord, and it is not our purpose to restate at great length and in detail the contradictory testimony of the several witnesses.

The plaintiff is a man 60 years of age, employed as a hostler with the N. & W. Railway Company, living at 2273 Indiana Avenue, City of Columbus, which avenue is between Oakland Avenue and Summit Street and west of Summit. The plaintiff's working trick began at 3:00 o'clock and ended at 11:00 o'clock P. M. Going to his work he regularly boarded a southbound Summit Street car which was due at about 2:00 o'clock P. M. Summit Street is a thoroughfare running north and south with a northbound and southbound street car track thereon. Oakland Avenue intersects Summit Street from the east and from the west and we will for the purposes of this opinion designate them as East Oakland and West Oakland Avenue. The place where Oakland Avenue intersects Summit Street from the east is about 92 feet from the place where it intersects it from the west, this measurement being made from the south curb line of East Oakland Avenue projected into Summit Street to the north line of West Oakland Avenue projected into Summit Street. The car stop for southbound traffic is about 56 feet from the north curb line of West Oakland Avenue projected. There is no traffic light at the intersection of East Oakland Avenue and Summit Street but there is such a light between the north and southbound street car tracks in the center of the intersection of West Oakland Avenue and Summit Street.

It is the claim of the plaintiff, supported by his testimony, that on the afternoon of February 3, 1936, at about 1:45 P. M. he left his home, accompanied by a Mrs. Houchins, walked at an ordinary gait over to Summit Street and to the north side thereof, proceeded on West Oakland Avenue to Summit Street then north on Summit to a place opposite the intersection of East Oakland and Summit; that he saw the car coming about half a block north; that two women were waiting at the regular stop and they started from the sidewalk to take the car as it was approaching; that he did not follow them immediately because of an oncoming automobile which he permitted to pass, then followed the women and that he boarded the car, had caught hold of the grab iron on the side thereof and as he started to get onto the front or bottom step the car began to move and as he was moving on up to step into the vestibue it "gave an awful lunge", threw him around against the side and though he held on for a second or two he was shaken loose and hit the ground causing a broken hip and other severe injuries. He further testified, and this was corroborated, that he fell a few feet north of the traffic light. His position is variously fixed by the witnesses as, in the middle of the southbound track, across the east rail and between the west rail and the curb of Summit Street.

The plaintiff was taken to a doctor's office where he remained five or ten minutes then removed to Grant Hospital. On the second day he was taken to an upper floor, X-Ray pictures made of his hip. For several days following his injuries, hypodermics were administered every four hour and thereafter one-half grain codeine tablets were given every four hours, which treatment was kept up for several weeks.

The third day that he was in the hospital he was called on by Mr. Wiegand, a claim agent for defendant company and Mr. Nodes, stenographer. Mr. Wiegand interviewed the plaintiff and Mr. Nodes took his statement. During the interview no one was present but the plaintiff and the other two men. Later the daughter of the plaintiff came to his room, whereupon plaintiff testifies that the interview ceased.

The story of the plaintiff in part as testified by the reporter was to effect that the car was moving when he boarded it. There are other parts of his statement that would permit of the interpretation that the car was not moving when he put his foot on the bottom step. So that in a material particular, namely, whether or not the car was moving when he got on it, there was direct contradiction between his description of the occurrence of the accident as given at the hospital and his testimony as offered at the trial. Among other things, he said at the hospital that two women were boarding the car ahead of him and it is urged that he must have seen them or have been near them when he boarded or he could not have known that they were there.

Upon the trial the interview at the hospital was offered to impeach the plaintiff. He said that he did not recall whether or not he had made the statements and it was urged that they might have been made by him while under the influence of opiates and without a full appreciation or grasp of the meaning of that which he said.

The plaintiff is corroborated in certain particulars by other witnesses. Mrs. Houchins says that she walked from plaintiff's home with him to a point about 60 feet west of Summit Street, when she left to go across to the south side of the street to a restaurant; that they moved at a normal pace and that when she left the plaintiff he was moving toward Summit Street at an ordinary gait. A Mr. Douglas, who operates a barber shop on the south side of Oakland Avenue west of Summit and about 100 feet therefrom, says that on the afternoon of the day of the accident at about 2:00 in the afternoon, plaintiff passed his shop and saluted him; that he was then walking at a moderate rate of speed.

It is the claim of the defendant that the plaintiff did not board the car at the regular stop; that it was moving into the intersection at Oakland Avenue near the traffic light at about the time that the plaintiff was proceeding on the north side of Oakland Avenue and before he had gotten into the intersection; that he ran into the intersection to catch the car and that he reached for the grab iron while the car was in motion; that he missed it and fell, probably because of the slippery condition of the street and the speed of the car; that he fell under the traffic light and about 63 feet south of the car stop sign.

Supporting the contention of defendant, a Miss Bragg and a Mr. Glaze, passengers on the car, say that the plaintiff ran toward the moving car into the intersection and Mr. Glaze testifies that he saw the plaintiff tumble into the street and Miss Bragg that she saw him running until he reached a place near the car where he passed out of her view. She also says that she could see him running for a distance of ¾ of a half block or about a hundred feet and that he moved a hundred feet while the car was moving about 35 feet.

Mrs. Dickson and Miss Grey were the two women who boarded the car at the regular stop. Both say that the plaintiff was not near them although both admit on cross-examination that they were not paying any especial attention to whether the plaintiff was back of them as they moved on to the street car. One of them says that she was in the street car ready to be seated when it started. The other that she was paying her fare at the rear of the car when it began to move. Mrs. Houston, Mrs. Nunimaker, Mr. Bro, the motorman, all support the claim of the defendant that the plaintiff was not with nor near the women while they waited for the car nor as they moved up to and boarded it.

The controlling factual question is

whether or not the plaintiff boarded the car while it was at a standstill or after it was in motion. There is direct and inferential conflict between the plaintiff and the defendant's witnesses in all the particulars heretofore set forth. The two witnesses who say that they saw plaintiff running to catch the car are contradicted by the plaintiff and his evidence at the trial is at variance with parts of his statement in the hospital.

The one witness who says that she saw plaintiff running at a distance of ¾ of a half a block or 100 feet away is contradicted by Mrs. Houchins who says that at 60 feet away she saw plaintiff moving leisurely toward the car and by Mr. Douglas who testifies that he observed the plaintiff moving at a moderate rate at a place which was a distance of a hundred feet away.

If Miss Bragg had attempted to fix the distance that she saw the plaintiff run in feet only, we would readily concede that she might have been mistaken because of inability to accurately measure distances in feet but when she says further that it was ¾ of a half a square, this is support for her estimate that it was a hundred feet and probably more.

There are, of course, other phases of the testimony which we could discuss, some of which support the claim of the plaintiff and others the theory of the defense.

The legal question presented is whether or not upon this record the trial judge erred in refusing to sustain the motion for directed verdict at the conclusion of the whole case and for a judgment **veredicto non obstante.**

It is urged with much conviction and considerable force that the uncontradicted physical facts in the case are such that the accident could not have occurred in the manner asserted by the plaintiff, because of the place where he fell. This claim is predicated, first, upon an assumption that the physical facts are established. With this we can not agree without modification, but if it be granted that the plaintiff fell where counsel for the appellant says, even so we would not feel justified from

that fact and other known physical facts in determining that the accident could not have occurred in the manner claimed by the plaintiff.

The obligation now fixed by the statute, §11601, GC, is the same as on a motion for directed verdict as on motion for judgment notwithstanding the verdict. The court may now consider the evidence adduced and is not restricted to the pleadings in entering judgment notwithstanding the verdict as before the amendment to §11601, GC, which now reads,

"When, upon the statements in the pleadings or upon the evidence received upon the trial, one party is entitled by law to judgment in his favor, judgment shall be so rendered by the court, although a verdict has been found against such party and whether or not motion to direct a verdict may have been made or overruled, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence."

It will be noted that a judgment may not be entered upon a finding that the verdict is against the weight of the evidence. The trial judge determined that this verdict was against the weight of the evidence only, and if correct in this conclusion. the motions of the defendant were properly overruled.

When the scintilla rule was effective there was a clear and definite distinction between the test which a trial judge should apply to the evidence to determine if a cause should be submitted to a jury and if a motion for new trial should be sustained. In the former if the plaintiff had produced any evidence on all material elements of his case the cause was rightly submitted to the jury but if the verdict of the jury was unsupported by the evidence, even though the case was properly submitted to the jury, the motion for new trial was properly sustained.

The court abolished the scintilla rule in **Hamden Lodge v Gas Company, 127**

Oh St 469, which had been certified as a conflict case. It was thus appropriate that the court speak on the status of the scintilla rule in Ohio, but a reading of the facts in the Hamden Lodge case is convincing that the rule could have been applied without modification and the same judgment reached. Certainly upon every test set forth by the writer of the opinion the plaintiff below had produced no testimony which would justify the trial judge in submitting the case to the jury for determination. However, the scintilla rule is abolished in the 2nd syllabus and the new rule stated in the second, third and fourth propositions of the syllabi of the case.

3. "Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if upon any essential issue, after giving the evidence such favorable construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him."

4. "Where from the evidence reasonable minds may reach different conclusions upon any question of fact, such question of fact is for the jury. The test is not whether the trial judge would set aside a verdict on the weight of the evidence."

It is somewhat incongruous to announce that upon certain proof a question of fact is one for a jury and then immediately to say that the test is not whether the trial judge should set aside a verdict on the weight of the evidence. If a court weighs the evidence, determines that reasonable minds may reasonably differ upon its probative effect and thus makes it a case for the jury, i. e., for their determination, how can it be said that the verdict which that jury reaches may not be sustained because not supported by the weight of the evidence? The only answer is that the trial judge weighs the evidence twice and with different balances, one of which when reached takes the case to the jury, another, and of greater weight is required to support the verdict returned by the jury.

We do not find that the Supreme Court in any syllabus of any case has expressly said that a motion for new trial directed to the weight of the evidence should not be sustained if the state of the record is such that reasonable minds may differ upon any controverted material question—the test now fixed to take the case to the jury—but it has used language of that import and effect. As early as **Webb v Protection Insurance Company, 6 Oh St 566**, it was said that only when a verdict is palpably against the evidence or decidedly against it are courts warranted to set it aside. And in **Cleveland & S. W. Track Company v Garnet, 18 C. C. N. S. 215**, affirmed without opinion, **81 Oh St 413**, the Court said that before a verdict may be set aside it must appear that it is clearly wrong and in **Palmer & Sons v Cowie, 7 C. C. N. S. 46**, the Court said that before a verdict should be set aside as against the weight of the evidence it "must be so manifestly against the weight of the evidence that unbiased and unprejudiced minds could not have reached the conclusion reached by the jury."

Discussion of the question is found in 46 Corpus Juris, page 178 and this statement made,

"Where the evidence was so conflicting that different persons might honestly and intelligently have formed different conclusions therefrom * * * the verdict should be allowed to stand * * * ."

Supporting this proposition there are cited several hundred cases from states other than Ohio and two cases from Ohio. **Armstrong v C. M. & L. Traction Co., 10 O. N. P. N. S. 581**, and **Schmalstig v Taft, 19 O. N. P. N. S., 513, 518**, where the identical test set forth in the Hamden Lodge case to determine if a motion for directed verdict should be

sustained, was applied to hold that a motion for new trial should be overruled. The Supreme Court of Kansas states the rule in somewhat different language,

"Where the question is absolutely doubtful,—where some men would naturally come to one conclusion, and others to the opposite—then the verdict of the jury is conclusive."

Johnson v Leggett, 28 Kans., 2nd Edition Ann., 432. It may safely be said that outside of Ohio the cases cited in Corpus Juris, to which we have heretofore referred, support the theory that the rule there applied to a motion for new trial on the weight of the evidence is the same as now set out in the Hamden Lodge case on a motion for directed verdict.

Another inquiry arises by the enactment of §11601 GC, which expressly precludes the entering of judgment on the ground that the verdict is against the weight of the evidence which was enacted subsequent to the decision in the Hamden Lodge case. If the court under the rule there announced weighs the evidence in entering judgment, it is in conflict with the terms of §11601 GC. We are not required to determine this question because the trial judge did not sustain the motion for a directed verdict nor for judgment notwithstanding the verdict. But the Supreme Court having said that there is a difference between the quantum of evidence essential to take a case to a jury and to support a verdict against the motion for new trial on the weight of the evidence, we must give recognition to that determination. How then, upon that test, does this case stand? Here the conflict is not that of inferences but in direct testimony. It is in the field of credibility. No fact is developed in this case which refutes the claim of the plaintiff with certainty. His inconsistent statements go only to his credibilty and are no evidence of the facts therein contained. Kent v State, 42 Oh St 426; State v Kerlin, 51

Bull 317. What he says may be true although in the judgment of the trial court the probabilities are against its truth.

There are in our judgment two cases in Ohio which are helpful and determinative. The Painesville Utopia Theatre Co. v Lautermilch, 118 Oh St 167, and Pope v Mudge, 108 Oh St 192. In the former case the plaintiff sought a verdict predicated upon the negligence of the defendant in failing to keep a door locked or to warn the plaintiff of its presence as a result of which she entered the door and fell into a basement and received injuries. The defense was contributory negligence of the plaintiff. Judge Robinson in the opinion points out that the plaintiff at certain places in her testimony indicated that she fell as a result of advancing into an unlighted stairway after she had opened the door, whereas, in other places it appeared that the opening of the door and the falling into the stairway was simultaneous action. In this situation the court said in the syllabus,

"Whenever, from conflicting evidence of the same witness or of different witnesses, it becomes necessary to weigh such conflicting evidence to determine wherein the probable truth lies, or from a combination of circumstances determine an ultimate fact upon the determination of which different minds might reasonably arrive at different conclusions, it is the province of the jury to perform that function. It is reversible error for the court to invade that province of the jury."

In Pope v Mudge, supra, it was essential to Pope's recovery that he prove that Mudge defrauded him. One of the elements of fraud which it was essential that Pope prove was not only the misrepresentation made by Mudge but that he relied upon the representation and was deceived thereby. The deposition of Pope was taken while he was in a weakened condition, physically and mentally. In the deposition in response to a question Pope asserted that he did not believe the misrepresentation charged to Mudge. Upon this ex-

press statement the trial court directed a verdict against Pope grounded because upon his own admission he was not deceived by the misrepresentation made to him. The Supreme Court reversed and said the cause should have been submitted to a jury and although the first syllabus is probably overruled by the Hamden Lodge case, though not included in the list of cases therein expressly disapproved, the second proposition has not been disturbed. It is as follows:

"If, in ruling upon a motion to direct a verdict, the court is required to detect the truth from conflicting evidence of the same or different witnesses, the motion should be overruled."

Although the Hamden Lodge case has clarified the law as to the scintilla rule it has projected another and different proposition as to the measuring stick to be applied by the trial judge in determining when a motion for new trial should be sustained as against the weight of the evidence.

It is our opinion that the trial judge reached the proper conclusion in this case in overruling the motions of defendant.

We have discussed the questions urged on the appeal more at length than those urged on the cross-appeal, but we have likewise given attention to the brief on the claim that the court erred in sustaining the motion for a new trial. We find no support for holding that the trial judge exceeded his discretion in sustaining the motion and in view of the conclusion that we have reached respecting the test to be applied in determining a motion for a new trial we find no error prejudicial to the plaintiff by the action taken.

The judgment will be affirmed.

BARNES, J, concurs.
GEIGER, J, concurs in judgment.